UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BASF CORPORATION,<br><br>                         Plaintiff,<br><br>                 -against-<br><br>JOHN BECK'S AUTO BODY CO. a/k/a and/or d/b/a JOHN BECK'S AUTO BODY COMPANY, INC.,<br><br>                         Defendants. | COMPLAINT AND DEMAND<br>FOR JURY TRIAL<br><br>CIVIL ACTION NO._____ |

## COMPLAINT

Plaintiff BASF CORPORATION ("BASF"), by and through undersigned counsel, as and for its Complaint against the above-captioned defendant John Beck's Auto Body Co. a/k/a and/or d/b/a John Beck's Auto Body Company, Inc. ("Defendant"), alleges as follows:

## THE PARTIES

1. BASF is a citizen of the States of Delaware and New Jersey. BASF is incorporated under the laws of the State of Delaware and has its principal place of business in the State of New Jersey.

2. On information and belief, Defendant is a corporation organized and existing under the laws of the State of Pennsylvania, with its principal place of business at 7985 Route 13 at Haines Road, Levittown, PA 19057 and with John M. Beck Jr as the registered agent for service of process at 7985 Route 13 at Haines Road, Levittown, PA 19057.

3. BASF is in the business of selling aftermarket paints, refinishes, coating, primers, thinners and reducers as well as other related products and materials for the reconditioning, refinishing and repainting of automobiles, trucks, and other vehicles (collectively, "Refinish Products"). BASF resells the Refinish Products to distributors that in

turn sell the Refinish Products to automotive body shops that are in the business of reconditioning, refinishing, and repainting of automobiles, trucks, and other vehicles.

   4. Defendant is a body shop engaged in the business of reconditioning, refinishing and repainting automobiles, trucks, and other vehicles.

## JURISDICTION AND VENUE

   5. The jurisdiction of this Court over the subject matter of this action is predicated on 28 U.S.C. § 1332. The amount in controversy exceeds $75,000.00, exclusive of interest and costs, and complete diversity exists between the parties, as BASF is a citizen of the States of Delaware and New Jersey and Defendant is a citizen of the State of Pennsylvania. Defendant is subject to the jurisdiction of this Court because, among other things, a substantial part of the events giving rise to this claim occurred in Pennsylvania.

   6. Venue is proper in this Court, pursuant to 28 U.S.C. § 1391, in that a substantial part of the events or omissions giving rise to the claims asserted herein occurred in the District and Defendant is subject to the personal jurisdiction in this District.

   7. Michigan substantive law governs BASF's claims per Paragraph 7 of the Requirements Agreement.

## GENERAL ALLEGATIONS

*The Terms of the Requirements Agreement*

   8. On or about April 15, 2014, BASF and Defendant entered into a Requirements Agreement, a true and correct copy of which is attached hereto as Exhibit A and incorporated herein by reference.

   9. Pursuant to Paragraphs 1 and 2 of the Requirements Agreement, Defendant was required to fulfill one hundred percent of its requirements for Refinish Products

up to a minimum purchase requirement of $1,264,000.00 of Refinish Products ("Minimum Purchases") in the aggregate at suggested refinish pricing.

10. Pursuant to Paragraph 3 of the Requirements Agreement, BASF paid Defendant $205,000.00 ("Contract Fulfillment Consideration") in consideration of fulfilling all of its obligations under the Requirements Agreement.

11. Pursuant to Paragraph 3 of the Requirements Agreement, if the Requirements Agreement was terminated for any reason prior to Defendant purchasing a minimum of $1,264,000.00 of Refinish Products, Defendant was required to refund the Contract Fulfillment Consideration to BASF in accordance with the following schedule:

| Purchases | Contract Fulfillment Consideration Refund |
| --- | --- |
| Less than 1/5 of Minimum Purchase | 100% |
| Less than 2/5 and greater than 1/5 of Minimum Purchase | 95% |
| Less than 3/5 and greater than 2/5 of Minimum Purchase | 75% |
| Less than 4/5 and greater than 3/5 of Minimum Purchase | 55% |
| Less than 5/5 and greater than 4/5 of Minimum Purchase | 35% |
| After 5/5 of Minimum Purchase | 0% |

### *Defendant's Breach of the Requirements Agreement*

12. On or about January 2016, Defendant, without any justification, breached and ultimately terminated the Requirements Agreement by, among other things, entering into an agreement with one of BASF's competitors and failing to purchase one hundred percent of its requirements for Refinish Products from BASF.

13. Since at least January 2016, Defendant has failed and refused to purchase any further Refinish Products in violation of Paragraphs 1 and 2 of the Requirements Agreement.

14. Defendant's purchases of Refinish Products between signing the Requirements Agreement and the breach totaled only $316,207.10, less than two-fifths and greater than one-fifth of its minimum purchase requirement of $1,264,000.00 of Refinish Products. A purchase balance of at least $947,792.90 remains due and owing under the terms of the Requirements Agreement.

15. In violation of Paragraph 3 of the Requirements Agreement, defendant has failed and refused to refund BASF the sum of $194,750.00, which represents 95% of the $205,000.00 in unearned Contract Fulfillment Consideration.

16. BASF has fulfilled its obligations and remains ready, willing, and able to perform all obligations, conditions, and covenants required under the Requirements Agreement.

17. By letter dated February 17, 2017, a true and accurate copy of which is attached hereto as Exhibit B, BASF gave Defendant notice that Defendant was in default of its contractual obligations and demanded refund of the Contract Fulfillment Consideration. In addition, BASF notified Defendant that it would seek additional damages that it is entitled to if the matter progressed to litigation.

18. Despite the foregoing demand, Defendant has failed to satisfy its obligations under the terms of the Requirements Agreement and to this day has failed to satisfy its obligations.

## COUNT 1

### Breach of Contract Against Defendant

19. BASF incorporates by reference the allegations contained in the above paragraphs.

20. Pursuant to Paragraphs 1 and 2 of the Requirements Agreement, Defendant was required to purchase from BASF one hundred percent of its requirements for

Refinish Products up to a minimum purchase requirement of $1,264,000.00 of Refinish Products in the aggregate at suggested refinish pricing over the Term.

21. Despite its obligations under the Requirements Agreement and in breach thereof, Defendant has failed to meet its minimum purchase requirements under the Requirements Agreement and failed to pay BASF the amounts due and owing thereunder.

22. The amount of outstanding minimum purchase requirements for Refinish Products by Defendant pursuant to the Requirements Agreement was approximately $947,792.90 as of the date of the filing of this Complaint.

23. Further, Defendant has breached the Requirements Agreement by entering into an agreement for the purchase of Refinish Products with one of BASF's competitors.

24. As a result of the unjustified breach of the Requirements Agreement by Defendant without legal excuse and, pursuant to Paragraph 3 of the Requirements Agreement, Defendant is obligated to repay to BASF $194,750.00.

25. As of the date of the filing of this Complaint, Defendant has damaged BASF in the following amounts under the Requirements Agreement:

   a. $194,750.00 for refund of the Contract Fulfillment Consideration; and
   b. $947,792.90 for the remaining balance of Defendant's minimum purchase requirement of $1,264,000.00.

26. BASF has performed and fulfilled all obligations and conditions required of it under the terms of the Requirements Agreement. Nevertheless, Defendant's breaches of its obligations under the terms of the Requirements Agreement have resulted in damage to BASF in the amount of $1,142,542.90.

## COUNTS II & III

### Unjust Enrichment and Quantum Meruit Against Defendant

27. BASF incorporates by reference the allegations contained in the above paragraphs.

28. Defendant has received the benefit of the Contract Fulfillment Consideration provided by BASF to or on behalf of Defendant.

29. The fair market value of the use of the Contract Fulfillment Consideration provided by BASF is at least $205,000.00, exclusive of costs, expenses, and attorneys' fees.

30. Defendant has not provided repayment of the Contract Fulfillment Consideration to BASF.

31. Defendant has retained the benefit of the Contract Fulfillment Consideration provided by BASF, which has resulted in an inequity to BASF in the amount of $205,000.00.

32. BASF is entitled to recover from Defendant the Contract Fulfillment Consideration in the amount of not less than $205,000.00 and for other benefits provided at BASF's expense for which no compensation has been provided.

33. Defendant is liable to BASF in the amount of not less than $205,000.00 or such other amount as may be established by the evidence.

## COUNT IV

### Declaratory Relief Against Defendant

34. BASF incorporates by reference the allegations contained in the above paragraphs.

35. BASF requests a judicial declaration of BASF's and Defendant's respective rights under the Requirements Agreement.

36. An actual dispute and justiciable controversy presently exists between BASF and Defendant concerning their rights and obligations under the Requirements Agreement. Defendant contends that it has not breached the Requirements Agreement. BASF disagrees and contends that the Requirements Agreement is in full force and effect, and that Defendant is in breach of the Requirements Agreement.

37. A judicial declaration is necessary to establish BASF's and Defendant's rights and duties under the Requirements Agreement.

## DEMAND FOR JURY TRIAL

38. BASF demands a trial by jury on all counts and as to all issues.

## PRAYER FOR RELIEF

**WHEREFORE**, BASF prays that this Court enter Judgment in its favor and against Defendant as follows:

    a. Awarding BASF monetary damages in an amount to be determined at trial, but not less than $1,142,542.90 together with prejudgment interest;

    b. Awarding BASF declaratory judgment in that the Requirements Agreement is in full force and effect;

    c. Awarding BASF all costs and fees of this action as permitted by law; and

    d. Awarding BASF such other and further relief as this Court deems just and proper.

Dated: March 23, 2018

                              **Leader & Berkon LLP**

By: _/s/ Joseph I. Fontak_

Joseph I. Fontak (JF 3013)
Jfontak@leaderberkon.com
Caroline C. Marino
(Motion for *pro hac vice* admission to be filed)
cmarino@leaderberkon.com
Andrea Titone
(Motion for *pro hac vice* admission to be filed)
atitone@leaderberkon.com
1515 Market Street, Suite 1200
Philadelphia, PA 19102
Telephone: (215) 755-0455
Fax: (215) 405-2999

*Attorneys for Plaintiff*
*BASF Corporation*

# Exhibit A

## REQUIREMENTS AGREEMENT

Agreement made as of _____4/15/14_____ ("Effective Date"), with each twelve (12) months thereafter being a Contract Year by and between BASF Corporation, 26701 Telegraph Road, Southfield, MI 48033 ("BASF"), and John Beck's Auto Body Company, Inc., 7985 Route 13, Levittown, PA 19057 ("BODY SHOP").

WHEREAS, BODY SHOP engages in the business of refinishing and repainting the bodies of automobiles, trucks, and other vehicles, ("Business") either directly or through persons or legal entities over which BODY SHOP has control ("Controlled Businesses"), which requires the use of after-market paints, refinishes, coatings, primers, thinners, and reducers ("Refinish Products"); and

WHEREAS, BASF is a manufacturer of Refinish Products;

NOW THEREFORE, it is agreed by and among the parties as follows:

1. Term: The Term of this Agreement shall commence with the first full calendar month subsequent to the Effective Date and continue until BODY SHOP and or until its Controlled Businesses have purchased $1,264,000 in the aggregate of BASF Products, net of all discounts ("Minimum Purchase Requirements"), subsequent to the Effective Date. However, BASF shall have the right to terminate this Agreement at any time if BODY SHOP or any Controlled Business makes an assignment for the benefit of creditors, declares or is declared bankrupt, or either a controlling interest in the BODY SHOP or substantially all of the assets of the BODY SHOP are sold to a third party who is already under an obligation to use BASF Products pursuant to a contract with BASF Corporation or any of its subsidiaries.

2. Purchase of Requirements of Products: During the Term of this Agreement, BODY SHOP shall, and shall cause each of its Controlled Businesses to purchase from an authorized BASF distributor one hundred percent (100%) of their requirements for Refinish Products in connection with the Business, specifying only BASF brand products for Refinish Products.

3. Contract Fulfillment Consideration: Within forty-five (45) days of the Effective Date of this Agreement, BASF shall pay to BODY SHOP $205,000 in consideration of BODY SHOP fulfilling all of its obligations under this Agreement for the entire Term. Should this Agreement terminate for any reason prior to the expiration of the Term set forth above or should BODY SHOP and/or any of its Controlled Businesses be sold during the Term, in addition to whatever rights and obligations the parties may have to each other, BODY SHOP shall refund the percentage of the Contract Fulfillment Consideration in accordance with the following schedule:

| Purchases | | Contract Fulfillment Consideration Refund |
|---|---|---|
| a. | less than 1/5th of Minimum Purchases | 100% |
| b. | less than 2/5th and greater than 1/5th of Minimum Purchases | 95% |
| c. | less than 3/5th and greater than 2/5th of Minimum Purchases | 75% |
| d. | less than 4/5th and greater than 3/5th of Minimum Purchases | 55% |
| e. | less than 5/5th and greater than 4/5th of Minimum Purchases | 35% |
| f. | After 5/5th of Minimum Purchases | 0% |

4. <u>Severability</u>: In the event that any provision of this Agreement shall be held invalid or unenforceable for any reason by a court of competent jurisdiction, such provision or part thereof shall be considered separate from the remaining provisions of this Agreement, which shall remain in full force and effect. Such invalid or unenforceable provision shall be deemed revised to effect, to the fullest extent permitted by law, the intent of the parties as set forth therein.

5. <u>Loaned Equipment and Consigned Inventory</u>: BASF shall loan the following equipment to each of BODY SHOP's facilities or Controlled Businesses where the Business is conducted ("Loaned Equipment"):

-- Mixing Machine
-- Quart & Gallon Lids

BASF shall also place on consignment, 1 set of Onyx Toners ("Consigned Inventory").

BASF shall prepare and forward to its filing agency, the required Form UCC-1 evidencing BASF's ownership of the Loaned Equipment, and BASF shall have the right to label the Loaned Equipment as the property of BASF, which signage shall remain clearly visible.

The Loaned Equipment shall remain the property of BASF, shall only be used in conjunction with BASF Refinish Products, and at the option of BASF, shall be surrendered to BASF at the end of this Agreement in the same condition as delivered, reasonable wear and tear excepted. All Loaned Equipment shall be installed by or at the direction of BODY SHOP, which shall be responsible for compliance with all applicable laws and regulations concerning the installation and operation of the Loaned Equipment. BODY SHOP hereby acknowledges receipt of the document entitled "Important Safety Notice." Computer equipment such as: (a) CPUs, (b) terminals, (c) keyboards, (d) printers, etc., are NOT explosion-proof and should NOT be installed or used within a mixing area where paint and paint products are dispensed or used. BODY SHOP agrees to: (a) install or have the Loaned Equipment installed in a

safe area of its facility, and (b) BODY SHOP will indemnify and defend BASF in the event of any harm resulting from the installation, use, or maintenance of the Loaned Equipment. BODY SHOP shall be solely responsible for the costs of repair of the Loaned Equipment, including the costs of any replacement parts, in the event that BODY SHOP damages the Loaned Equipment as determined by BASF. Otherwise BASF shall provide maintenance, upgrades, and support as reasonably needed for all Loaned Equipment.

Upon demand by BASF, but in no event earlier than the termination or expiration of the Term, BODY SHOP shall pay BASF for all or that portion of the consumed Consigned Inventory in accordance with the then current prices for said Consigned Inventory and this Agreement. In the event that the Consigned Inventory is unopened, BODY Shop may return Consigned Inventory to BASF at no charge if the Consigned Inventory is deemed in saleable condition by BASF.

6. <u>Confidential Information</u>: This Agreement, and all of its terms, as well as any other information designated confidential and disclosed by either party to the other will be kept in confidence and restricted to those persons in the recipient's business who need to know same, except as to any such information which the recipient shows has become public information or which may be required to be disclosed by law.

7. <u>Governing Law</u>: This Agreement and performance or non-performance hereunder shall be governed by and construed under the laws of the State of Michigan without regard to principles of conflicts of law. Each party hereto submits to the jurisdiction of the courts located in Oakland County, Michigan in connection with any dispute arising under this Agreement.

8. <u>Assignment</u>: This Agreement may not be assigned or otherwise transferred except upon the prior written consent of both parties. However, subject to BASF's consent, BODY SHOP shall cause the party or parties which, individually or in the aggregate, acquire all or substantially all of the assets of any location of a Controlled Business where the Business is conducted, to assume the rights and obligations under this Agreement.

9. <u>Notices</u>: All notices from either party to the other relating to this Agreement are to be sent by First Class United States mail, postage prepaid (effective three (3) days after postmark), overnight mail or delivered personally to the respective addresses set forth above.

10. <u>Warranty</u>: The parties hereto represent and warrant to each other that the execution of this Contract is not in breach of any other legal obligation that said party may have to any third party and that each party hereto agrees to defend and indemnify the other for breach of this representation and warranty.

11. <u>Entire Agreement</u>: This Agreement constitutes the entire agreement between BASF and the BODY SHOP, terminating and superseding any prior agreements relating to the subject matter hereof and may be amended only by a writing signed by both parties, notwithstanding any course of dealing or the exchange of correspondence or documents not mutually executed.

12. <u>Expiration</u>: The offer reflected in this agreement is valid from sixty days of BASF's signature date; if the agreement is not executed by BODY SHOP on or before that date the offer will be deemed automatically withdrawn.

    IN WITNESS WHEREOF, the parties have entered into this Agreement effective as of the day and year first above written.

| BASF Corporation signature date | John Beck's Auto Body Company, Inc. |
|---|---|
| BY: _[signature]_ | BY: _[signature]_ |
| TITLE: **V.P. Business Management** **Automotive/Refinish Solutions** | TITLE: Owner |
| DATE: 3/31/14 | DATE: 4/15/2014 |

# Exhibit B



Writer's Direct Line: (973) 245-6021
E-mail Address: michaela.obrien@basf.com

February 17, 2017

**Via Federal Express**
**Tracking No.: 778461282049**

John Beck
John Beck Auto Company
7985 Route 13
Levittown, PA  19057

Re:   Requirements Agreement dated April 15, 2014 between BASF Corporation ("BASF") and John Beck's Auto Company, Inc. ("John Beck's")

Dear Mr. Beck:

This letter serves as a formal demand for repayment of amounts owed to BASF Corporation ("BASF") of $205,000.00 as a result of John Beck's Auto Company, Inc. ("John Beck's") unilateral termination of the Requirements Agreement dated April 15, 2014 and John Beck's failure to honor its contractual obligations to BASF pursuant to the terms of the above-referenced Agreement. Specifically, since the breach of the Requirements Agreement, John Beck's is in default of its obligation to: (1) purchase BASF Refinish Products as 100% of its requirements for Refinish Products; 2) purchase a combined minimum of $1,264,000.00 of BASF Refinish Products; and 3) repay the total Contract Fulfillment Consideration of $205,000.00.

In the event that John Beck's fails to repay the amount owed, within ten (10) days of the date of receipt of this letter, BASF will refer this matter to litigation and will seek all damages to which BASF is entitled, for payment of the $205,000.00 and lost profits, resulting from John Beck's breach of the Requirements Agreement.

If you are represented by an attorney, please have him/her contact me. If you are not represented by an attorney and interested in resolving this matter amicably, please:

   1. Contact me directly at  telephone No. 973-245-6021; or

BASF Corporation
100 Park Avenue
Florham Park, NJ  07932
Tel: (800) 526-1072
www.basf.com/usa



2. Remit payment in full by certified bank check to BASF Corporation, mailed to the attention of:

>Mr. Randy Tucker
>**Distribution Programs Coordinator**
>**BASF Corporation**
>**26701 Telegraph Road**
>**Southfield, MI 48033**

Very truly yours

*Michaela O'Brien*

Michaela O'Brien
Assistant General Counsel

/mo'b
cc:   Adam Lazewski
      Michael Killian
      Randy Tucker

BASF Corporation
100 Park Avenue
Florham Park, NJ  07932
Tel: (800) 526-1072
www.basf.com/usa